UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SHIRLEY PINKSTON o/b/o          )
JOSEPH E. HOFSTETTER,           )
                                )
        Plaintiff,              )
                                )
    vs.                         )        Case No. 4:16 CV 1321 ACL
                                )
NANCY A. BERRYHILL,[1]          )
Acting Commissioner of Social Security,   )
                                )
        Defendant.              )

## <u>MEMORANDUM</u>

Shirley Pinkston ("Plaintiff") brings this action on behalf of Joseph E. Hofstetter,

deceased, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security

Administration Commissioner's denial of Hofstetter's application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

contained in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]   Nancy A. Berryhill is now the Acting Commissioner of Social Security.   Pursuant to Rule
25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting
Commissioner Carolyn W. Colvin as the Defendant in this suit.

## I.   Procedural History

Hofstetter filed an application for SSI on February 20, 2013, claiming that he became unable to work due to his disabling condition on December 31, 2003.   (Tr. 12, 144-49.)   He claimed that he was unable to work due to asthma, high blood pressure, atopic eczema dermatitis, and a heart murmur.   (Tr. 169.)   Hofstetter's claim was denied initially.   (Tr. 85-90.) Following an administrative hearing, Hofstetter's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated February 13, 2015.   (Tr. 12-24.)   The ALJ found that, despite Hofstetter's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

Hofstetter died on March 15, 2015, after which the Appeals Council of the Social Security Administration substituted Plaintiff Shirley Pinkston for Hofstetter.   (Doc. 19 at 2.)   The Appeals Council denied Plaintiff's request for review on June 21, 2016.   (Tr. 1-3.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Plaintiff first argues that the ALJ erred in determining Hofstetter's RFC.   Plaintiff also contends that the ALJ erred in finding Hofstetter did not meet or equal Listing 8.05.   Plaintiff next argues that the ALJ erred "by failing to evaluate the combined effects of all of the impairments of the Plaintiff and by failing to give controlling weight to the opinion of a treating doctor."   (Doc. 19 at 10.)   Finally, Plaintiff argues that the ALJ "and the Commissioner erred as a matter of law in failing to sustain their burden of establishing that there is other work in the national economy that the Plaintiff can perform."   *Id.* at 14.

## II.   The ALJ's Determination

The ALJ found that Hofstetter had not engaged in substantial gainful activity since

February 20, 2013, the application date.   (Tr. 14.)

In addition, the ALJ concluded that Hofstetter had the following severe impairments: eczema, atopic dermatitis, xerosis,[2] and asthma.   *Id.*   The ALJ found that Hofstetter did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 15.)

As to Hofstetter's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a).   He needs to alternate between standing and sitting every 30 minutes for a brief position change; can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, and crouch; can occasionally crawl; cannot finger; must avoid concentrated exposure to extreme cold and humidity, as well as fumes, odors, dusts, gases, and poor ventilation; should avoid concentrated exposure to work hazards, such as moving machinery and unprotected heights; and can tolerate no more than incidental contact with co-workers and no contact with the general public.

(Tr. 16.)

The ALJ found that Hofstetter's allegations regarding his limitations were not entirely credible.   (Tr. 18.)   In determining Hofstetter's RFC, the ALJ indicated that she was assigning "partial weight" to the opinion of treating dermatologist, William V. Stoecker, M.D.   *Id.*

The ALJ further found that Hofstetter was unable to perform any past relevant work.   (Tr. 20.)   The ALJ noted that a vocational expert testified that Hofstetter could perform jobs existing in significant numbers in the national economy, such as egg processor, production checker, and cutter-paster.   (Tr. 21.)   The ALJ therefore concluded that Hofstetter had not been under a

---

[2]Pathologic dryness of the skin.   *Stedman's Medical Dictionary*, 2159 (28th Ed. 2006).

disability, as defined in the Social Security Act, since February 20, 2013, the date the application was filed. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on February 20, 2013, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4.      The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the plaintiff's impairments.

6.      The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted).   *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

## III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work."

*Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other

work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based

on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

### IV. Discussion

### 1.      Listing 8.05

"[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). "If the claimant wins at the third step (a listed impairment), [ ]he must be held disabled, and the case is over." *Jones v. Barnhart,* 335 F.3d 697, 699 (8th Cir. 2003). But "[m]erely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing. 'An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify.'" *McCoy v. Astrue,* 648 F.3d 605, 611-12 (8th Cir. 2011) (quoting *Zebley,* 493 U.S. at 530). The burden is on the claimant to demonstrate that his impairment matches all the specified criteria of a listing. *McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013).

Plaintiff argues that the ALJ erred in finding Hofstetter did not meet or equal Listing 8.05. An individual's dermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative

dermatitis, allergic contact dermatitis) meets Listing 8.05 when it causes "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.05. "Extensive skin lesions" are those that "involve multiple body sites" and result in "very serious" limitations: for example, lesions that "interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity," or lesions occurring on the palms of both hands or the soles of both feet. *Id.* § 8.00(C)(1)(a)-(c).

The ALJ indicated that she had considered all of Hofstetter's impairments individually and in combination, and found that the record did not demonstrate the existence of an impairment or combination of impairments that met or equaled the criteria of a listed impairment. (Tr. 16.) The ALJ specifically addressed Listing 8.05, and found that its criteria was not satisfied "because the record does not document the claimant having extensive skin lesions that persist for at least three months despite his continuing treatment as prescribed." *Id.*

Although the ALJ did not discuss the medical evidence at step three of her opinion, she provided a detailed discussion of the medical evidence when determining Hofstetter's RFC at step four. With regard to Hofstetter's dermatological disorder, the ALJ stated that Hofstetter was noted to have ichthyosis[3] and facial dermatitis in August 2012 when seen by Dr. Stoecker. (Tr. 17, 242.) Dr. Stoecker prescribed a topical steroid, with instructions to apply it twice a day for two weeks, and then twice per week as needed thereafter. *Id.* The ALJ noted that, in April 2013, Hofstetter presented to Robyn Hedges, FNP, with scattered lesions on his extremities. (Tr. 17, 254.) Hofstetter reported that he was only using his previously-prescribed topical steroid two or three times per week at that time. *Id.* Ms. Hedges (mistakenly referred to by the ALJ as

_____

[3]Congenital disorder characterized by non-inflammatory dryness and scaling of the skin. *Stedman's* at 943.

Hofstetter's "treating dermatologist") described Hofstetter's dermatitis as "stable." *Id.* The ALJ stated that Hofstetter sought no further treatment for his dermatological disorder. (Tr. 17.)

Plaintiff argues that the ALJ did not appreciate the severity of Hofstetter's dermatological condition, which he had since infancy. Plaintiff notes that Hofstetter testified at the hearing that he used a steroid cream every day after soaking in the tub for 30 minutes or longer. (Tr. 57-58.) Plaintiff argues that the ALJ appears to have discounted this testimony based on medical reports of Ms. Hedges that were more than a year old. Plaintiff also notes that Hofstetter saw Ms. Hedges for complaints of insomnia and hypertension rather than his dermatological condition.

The undersigned finds that the ALJ's step three determination is supported by substantial evidence. The ALJ relied on the April 2013 records of Ms. Hedges because Hofstetter sought little treatment during the relevant period of February 20, 2013 (his application date), through February 13, 2015 (the date of the ALJ's decision). Ms. Hedges' records reveal that Hofstetter's dermatitis was stable at that time. Based on the record showing infrequent treatment of his dermatitis during the relevant period, the ALJ did not err in finding Hofstetter did not meet the requirements of Listing 8.05. Hofstetter failed to establish the presence of "extensive skin lesions that persist for at least three months despite his continuing treatment as prescribed."

### 2. RFC and Opinion Evidence

Plaintiff argues that the ALJ erred in determining Hofstetter's RFC. Plaintiff also contends that, in determining Hofstetter's RFC, the ALJ erred in discrediting the opinion of treating dermatologist Dr. Stoecker.

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of his limitations. *Dunahoo v. Apfel,* 241 F.3d 1033, 1039 (8th Cir. 2001). Although

the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel,* 245 F .3d 700, 704 (8th Cir. 2001); *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer,* 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue,* 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).

Plaintiff argues that the ALJ erred in failing to assign controlling weight to the opinion of Dr. Stoecker. "'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Dr. Stoecker completed a Physical Residual Functional Capacity on August 1, 2013. Dr. Stoecker expressed the opinion that Hofstetter could: sit for eight hours in an eight-hour workday, and stand for four hours; occasionally lift up to forty pounds due to fissures on his heels, continuously carry up to ten pounds, and occasionally carry up to 50 pounds; continuously bend, squat, crawl, climb, reach above, stoop, crouch, and kneel; and continuously be around moving machinery and noise. (Tr. 262-64.) Dr. Stoecker also opined that Hofstetter could not use his hands for fine manipulation, or tolerate any exposure to marked temperature changes, driving automotive equipment, or exposure to dust, fumes, and gases. *Id*. Dr. Stoecker indicated that Hofstetter experienced mild pain of variable frequency. (Tr. 265.) He indicated that Hofstetter had no limitations as to mental activities such as concentration or following instructions, but was limited in his social activities, including interacting with others. (Tr. 265-66.) Dr. Stoecker stated that Hofstetter had not been prescribed analgesics, although weight loss had been recommended for pain relief. (Tr. 266.) Dr. Stoecker indicated that there were specific medical reasons Hofstetter should not work. *Id*. When asked to explain, Dr. Stoecker stated: "I cannot think of any suitable job, grandmother says 'no place will hire him. They look at [him] and say I don't want that guy touching me.'" *Id*. Dr. Stoecker further stated that Hofstetter had "severe asthma + eczema." *Id*.

On the same date, Dr. Stoecker authored a letter, in which he stated that Hofstetter has

"crusted, fissured hyperkeratosis on the feet, chronically erythematous face, and in general has

tried to work, but according to his grandmother, 'no place will hire him.'"  (Tr. 270.)  Dr.

Stoecker indicated that Hofstetter had "severe asthma and atopic dermatitis."  *Id.*  Hofstetter had

been hospitalized for his asthma, and "has uncontrolled atopic dermatitis with the

above-mentioned crusted fissures on the feet which bleed."  *Id.*  Dr. Stoecker stated that

Hofstetter was "limited in terms of the ability to stand and walk which was filled out in a detailed

questionnaire."  *Id.*  He continued as follows:

> The striking thing about this is that this is Joseph at his best, with the erythema
> persisting even after a concentrated regimen using soak and smear.   The best thing
> for him in the future will be to use a systemic agent such as methotrexate to help
> control the atopic dermatitis.

*Id.*  Dr. Stoecker concluded that, "I have known him since he was a baby and I can attest that his

atopic dermatitis, xerosis and asthma are all severe, but currently moderately controlled."  *Id.*

The ALJ indicated that she was assigning "partial weight" to Dr. Stoecker's opinions.

(Tr. 19.)   She found that the "specific functional limitations" that Dr. Stoecker assessed were

"generally consistent with the weight of the evidence; however, his characterization of the

claimant's skin disorder as being only moderately controlled is not supported by the record."  *Id.*

The ALJ then provided the following detailed explanation for her decision to assign less than

controlling weight to Dr. Stoecker's opinion:

> As is indicated hereinabove, the claimant's skin disorder has required
> minimal treatment since the alleged onset date of disability.   He required the use of
> a topical salve twice weekly for a two-week period beginning in August 2012, and
> twice per week as needed thereafter.   (Exhibit 2F/2).  Dr. Stoecker characterized
> the claimant's dermatological disorder as "stable" when using a topical steroid two
> or three times per week in April 2013, and the claimant was not utilizing any
> treatment during December 2013.   (Exhibits 3F/1, 6F/5).  Dr. Stoecker has not
> treated the claimant since April 2013.   Additionally, the undersigned notes that Dr.
> Stoecker based his opinion, in part, upon the reports of the claimant's grandmother,

> Shirley Pinkston. Ms. Pinkston parroted the claimant's allegations, which are not fully credible for the reasons detailed hereinabove. Based upon the totality of the foregoing, the undersigned gives Dr. Stoecker's opinion only partial weight.

*Id.*

The undersigned finds that the ALJ properly weighed Dr. Stoecker's opinions. Notably, although the ALJ disagreed with Dr. Stoecker's finding that Hofstetter's impairments were only "moderately controlled," the ALJ either adopted Dr. Stoecker's findings regarding Hofstetter's functional limitations or imposed greater limitations than those found by Dr. Stoecker. For example, the ALJ's determination that Hofstetter could perform sedentary work is consistent with Dr. Stoecker's finding that Hofstetter could sit for eight hours and stand for four hours. While Dr. Stoecker found that Hofstetter had the capacity to lift up to forty pounds occasionally, the ALJ limited him to lifting no more than ten pounds. The ALJ imposed the additional limitation of alternating between standing and sitting every thirty minutes. Similarly, Dr. Stoecker found that Hofstetter was capable of continuously bending, squatting, crawling, climbing, reaching above, stooping, crouching, and kneeling, whereas the ALJ found that he could only occasionally climb ramps and stairs, and could never climb ladders, ropes, or scaffolds. The ALJ's finding that Hofstetter could not finger, and must avoid concentrated exposure to temperature extremes and environmental irritants is consistent with Dr. Stoecker's opinions.

In discounting part of Dr. Stoecker's opinion, the ALJ pointed out that, despite providing an opinion in August 2013, Dr. Stoecker had not seen Hofstetter since November 2012. In addition, Hofstetter had received no treatment for the impairment after April 2013. *See Davis v. Barnhart,* 197 Fed. Appx. 521, 522 (8th Cir. 2006) (ALJ may properly consider lack of treatment in determination of benefits). The ALJ also noted that the last treatment note in the record shows that Hofstetter's eczema was "stable." (Tr. 19, 242.)

The ALJ pointed out that Dr. Stoecker's opinion that Hofstetter could not work because he "could not think of any suitable job," and that Hofstetter's grandmother reported that "no place will hire him" is not entitled to any weight.  (Tr. 266.)  First, the treating physician relied on the subjective reports of Hofstetter and his grandmother.  *See McCoy,* 648 F.3d at 617 (finding that substantial evidence supported ALJ's decision to partially discredit treating physician's opinion about claimant's RFC that was based, "at least in part, by [claimant's] self-reported symptoms"); *Teague v. Astrue,* 638 F.3d 611, 616 (8th Cir. 2011) (finding no error in ALJ's decision discounting doctor's report based on claimant's subjective complaints rather than on doctor's own findings).  Second, the ALJ addressed Hofstetter's ability to get a job rather than his ability to perform a job.  *See* 20 C.F.R. § 404.1566(a)(3); *Thomas v. Sullivan,* 928 F.2d 255, 261 (8th Cir. 1991 ("The issue of hireability is not to be considered in disability hearings."); *Glassman v. Sullivan,* 901 F.2d 1472, 1474 (8th Cir. 1990) ("Under the Social Security regulations, the test for disability is not whether an individual can actually get hired for a job, but whether he or she has the physical and mental capacity to adequately perform one.").  "An individual is not disabled ... due to an inability to be hired for any particular job or specific hiring practices of employers.  Rather, the test is whether the particular job is within the claimant's physical and mental capabilities." *Warford v. Bowen,* 875 F.2d 671, 674 (8th Cir. 1989) (citations omitted) (concluding that claimant's 132 rejections during employment search do not indicate disability).  Thus, the ALJ properly weighed the opinions of Dr. Stoecker.

Plaintiff argues that the ALJ erred in considering Hofstetter's asthma.  The ALJ found that Hofstetter's asthma was severe, but noted that the record did not reveal that he experienced any "chronic or acute respiratory complications."  (Tr. 18.)  The ALJ stated that the treatment notes indicate that his asthma results in "'minimal' symptoms that can be aggravated by environmental

irritants." (Tr. 18, 232.) Plaintiff disputes the ALJ's characterization of Hofstetter's asthma as "minimally bothersome," and notes he needed to use a nebulizer machine every six hours due to his asthma. Plaintiff also points to Dr. Stoecker's note that Hofstetter had been hospitalized for his asthma several times. (Tr. 270.)

The ALJ imposed the following environmental limitations due to Hofstetter's asthma: must avoid concentrated exposure to extreme cold and humidity, as well as fumes, odors, dusts, gases, and poor ventilation. (Tr. 16.) Plaintiff has failed to present evidence demonstrating greater limitations resulting from Hofstetter's asthma. Although Dr. Stoecker noted that Hofstetter had been hospitalized for his asthma at some point, there is no record of any hospitalizations for asthma or any other impairments during the relevant period. The medical evidence of record contains little treatment for asthma, and reveals Hofstetter's symptoms were "minimal," and were treated with using a nebulizer "a couple times a day." (Tr. 232.) Plaintiff offers no support for her argument that the nebulizer could not be used during regularly scheduled work breaks. Thus, the ALJ did not err in evaluating Hofstetter's asthma.

Plaintiff next contends that the ALJ did not properly consider Hofstetter's obesity. The ALJ discussed Hofstetter's obesity, noting that he stood at 5'10" tall and weighed 260 pounds, giving him a Body Mass Index ("MBI") of 37.3. (Tr. 18.) The ALJ acknowledged that obesity can cause limitations in function, and cited SSR 02-10p, which provides that the combined effects of obesity with other impairments may be greater than might be expected without obesity. *Id.* The ALJ stated that she had "considered the combined effects of the claimant's obesity with the claimant's other impairments when reaching the findings herein." *Id.*

The ALJ properly considered Hofstetter's obesity when determining his RFC. *See Heino v. Astrue,* 578 F.3d 873, 881 (8th Cir. 2009) ("[W]hen an ALJ references the claimant's obesity

during the claim evaluation process, such review may be sufficient to avoid reversal.")   The ALJ limited Hofstetter to a limited range of sedentary work, which involves lifting no more than ten pounds.   The ALJ further limited Hofstetter to a sit/stand option, only occasional climbing of ramps and stairs; and no climbing of ladders, ropes, or scaffolds.   This RFC adequately takes into account the effect of Hofstetter's obesity.

Plaintiff also argues that the ALJ erred in considering Hofstetter's mental RFC.   The ALJ found that Hofstetter's medically determinable mental impairment of bipolar disorder did not cause more than minimal limitations in his ability to perform basic mental work activities and was therefore non-severe.   (Tr. 14.)   The ALJ noted that Hofstetter established care for his mental impairment in December 2013, was prescribed Latuda,[4] and reported doing better in both February and April of 2014.   (Tr. 15, 282, 279.)   The ALJ pointed out that Hofstetter did not allege a mental impairment when he applied for benefits.   (Tr. 169.)   *See Kirby*, 500 F.3d at 707-09 (ALJ did not err in determining that claimant's depression was not severe where claimant did not allege depression on his application and received no long-term professional mental health treatment).

Despite finding Hofstetter's mental impairment non-severe, the ALJ nonetheless properly considered the effect of Hofstetter's mental impairment when determining his RFC.   The ALJ limited Hofstetter to "no more than incidental contact with co-workers and no contact with the general public."   (Tr. 16.)   Plaintiff contends that the ALJ did not account for Hofstetter's difficulty interacting with others.   The undersigned disagrees.   The ALJ adequately accounted for Hofstetter's allegations of social difficulties in limiting his contact with co-workers and the

---

[4]Latuda is indicated for the treatment of mood disorders such as schizophrenia and depression associated with bipolar disorder.   *See* WebMD, http://www.webmd.com/drugs (last visited January 16, 2018).

public.   The record does not establish the presence of greater limitations resulting from Hofstetter's mental impairment.

In determining Hofstetter's RFC, the ALJ also properly assessed the credibility of Hofstetter's subjective complaints under *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). *Polaski* requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of the medication; and (5) functional restrictions.   *Polaski,* 739 F.2d at 1322.   *See also Burress,* 141 F.3d at 880; 20 C.F.R. § 416.929.

The ALJ considered that Hofstetter's treatment was sporadic.   (Tr. 18).   The failure to seek regular medical treatment detracts against a claimant's credibility.   *See Casey,* 503 F.3d at 693.   The ALJ noted that Hofstetter sought no treatment from his dermatologist since April 2013. (Tr. 18.)   In addition, despite alleging a disabling mental impairment, Hofstetter has received minimal treatment for his mental impairments.   (Tr. 15.)   Hofstetter's lack of regular treatment significantly detracts from his credibility.

The ALJ discussed Hofstetter's work history and earnings.   (Tr. 18).   Specifically, she stated that Hofstetter was employed well below the substantial gainful activity level from the time he dropped out of school in 2000 until his alleged onset date of disability.   *Id.*   The ALJ stated that, based on Hofstetter's work history, he did not appear particularly motivated to work.   *Id.* The ALJ properly found that Hofstetter's poor work history detracted from his credibility.   *See Pearsall,* 274 F.3d at 1218 ("A lack of work history may indicate lack of motivation to work rather than a lack of ability.").

The ALJ noted that, despite Hofstetter's reported problems using his hands, the record noted that he spent significant time playing video games during April 2014, a period in which his dermatological condition was untreated. (Tr. 18, 282.)

As previously discussed, the ALJ also found that the objective medical evidence did not support Hofstetter's claims of disability. Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility. *See Curran-Kicksey v. Barnhart,* 315 F.3d 964, 968 (8th Cir. 2003).

Finally, the ALJ discussed the affidavit completed by Hofstetter's grandmother, Shirley Pinkston. (Tr. 19, 230.) Ms. Pinkston stated that she had observed Hofstetter have difficulty with chores, sporting activities, riding a bike, yard work, and work on automobiles due to the pain or discomfort caused by his skin condition. (Tr. 230.) She stated that his condition has had a "traumatic effect upon his life, preventing him from dating, completing schooling, holding a job, and generally enjoying life." *Id.* The ALJ assigned "little weight" to Ms. Pinkston's affidavit, noting that they corroborate Hofstetter's statements, which are not fully credible. (Tr. 19.) An ALJ may discount corroborating testimony from third parties on the same basis used to discredit a claimant's testimony. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998). The ALJ did not err in evaluating Ms. Pinkston's statements.

The Court finds the ALJ's RFC determination is supported by substantial evidence on the record as a whole. The ALJ performed a proper credibility analysis and found that Hofstetter's complaints were not entirely credible. The ALJ also properly evaluated the medical opinion evidence. Significantly, the functional limitations found by the ALJ are consistent with, and in some cases more restrictive than, the opinions of treating dermatologist Dr. Stoecker. The ALJ

also considered Hofstetter's lack of regular medical treatment for his impairments during the relevant period. Although Plaintiff claims that the ALJ did not consider all of Hofstetter's impairments and their combined effect, the record reveals that the ALJ did properly address all of his impairments but found that they were not as limiting as he alleged.

Substantial evidence supports the ALJ's decision that, although Hofstetter had significant limitations resulting from his physical and mental impairments, he simply did not meet his burden to prove a disabling RFC. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("'[T]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five [of the sequential evaluation process].'") (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). In limiting Hofstetter to a restricted range of sedentary work, the ALJ adequately accounted for the supportable degree of limitation due to Hofstetter's severe and non-severe medical impairments.

**3.** **Step Five Determination**

Plaintiff alleges that the Commissioner failed to sustain her burden at step five because the hypothetical questions posed to the vocational expert (VE) did not include all of Hofstetter's limitations.

When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step five burden. *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006). Additionally, there is a general rule that, "[i]f a claimant has a nonexertional impairment, the Guidelines and grid are not controlling and cannot be used to direct a conclusion of disabled or not disabled without regard to other evidence such as vocational testimony." *McCoy v. Schweiker,* 683 F.2d 1138, 1148 (8th Cir. 1982) (abrogated on other grounds).

In this case, the ALJ acknowledged that Hofstetter's "ability to perform all or substantially all of the requirements of [sedentary] work has been impeded by additional limitations," thereby requiring the testimony of a VE.  (Tr. 20.)   The ALJ properly relied on the testimony of a VE to find that Hofstetter could perform other sedentary and unskilled positions existing in significant numbers in the national economy, such as egg processor and production checker.   (Tr. 21.)

The hypothetical question the ALJ posed to the VE was based on the RFC formulated by the ALJ, which accounted for all of Hofstetter's credible limitations.   Consequently, the hypothetical question posed to the ALJ was proper.   *See Martise,* 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting *Lacroix v. Barnhart,* 465 F.3d 881, 889 (8th Cir. 2006)).

Thus, the ALJ's decision finding Hofstetter not disabled is supported by substantial evidence.   *See Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations).

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of March, 2018.